COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

September 26, 2014

Brian E. Farnan, Esquire
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801

Laurence V. Cronin, Esquire
Smith, Katzenstein & Jenkins LLP
800 Delaware Avenue, Suite 1000
Wilmington, DE  19801

> Re:  *ExamWorks, Inc. v. DeStefano*
> C.A. No. 10044-VCN
> Date Submitted:  September 4, 2014

Dear Counsel:

Plaintiff ExamWorks, Inc. ("ExamWorks") has moved to enforce a settlement agreement and for a temporary restraining order to prevent competition by Defendants Richard DeStefano ("DeStefano") and his employer, SCS Support Claims Services, Inc. ("SCS").  Defendants contend that SCS is not a proper party to this action,[1] that there has been no violation of the settlement agreement

---

[1] The parties disagree about whether the Court has personal jurisdiction over SCS. The Court does not decide that issue now but observes that any injunction entered against DeStefano would have the same ultimate consequences for SCS.

executed in January 2014 (the "Settlement Agreement"),[2] and that ExamWorks cannot make the required showing for a temporary restraining order.

In deciding a motion for a temporary restraining order, the Court generally considers "(i) the existence of a colorable claim, (ii) the irreparable harm that will be suffered if relief is not granted, and (iii) a balancing of hardships favoring the moving party."[3]  The Court traditionally focuses on the latter two elements given the early stage of the proceedings.[4]  On a motion to enforce a settlement agreement, the moving party bears the burden of proving the existence and terms of the agreement by a preponderance of the evidence.[5]  This Court has equitable jurisdiction to award specific performance to enforce a settlement agreement.[6]

---

[2] The Settlement Agreement and a Final Order and Permanent Injunction resolved an earlier dispute between ExamWorks and DeStefano.  *See ExamWorks, Inc. v. Richard DeStefano*, C.A. No. 9085-VCN (Del. Ch. Jan. 29, 2014) (ORDER); Letter from Scott A. Holt, Esquire, Att'y for DeStefano (Jan. 24, 2014).

[3] *CBOT Hldgs., Inc. v. Chi. Bd. Options Exch., Inc.*, 2007 WL 2296356, at *3 (Del. Ch. Aug. 3, 2007).

[4] *ACE Ltd. v. Capital Re Corp.*, 747 A.2d 95, 102 (Del. Ch. 1999).

[5] *United Health Alliance, LLC v. United Med., LLC*, 2013 WL 6383026, at *7 (Del. Ch. Nov. 27, 2013).

[6] *See, e.g.*, *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1290 n.53 (Del. Ch. 2004) ("'Delaware law favors the voluntary settlement of contested disputes.'  This

Here, the parties do not dispute the existence of the Settlement Agreement

(and the contracts allegedly incorporated therein), but disagree about its terms.

The Settlement Agreement provides, in part:

> Subject to DeStefano's compliance with the Final Order, ExamWorks agrees to waive enforcement of the non-compete and customer non-solicitation covenants in the Prior DeStefano Agreements, **provided** that ExamWorks' waiver of DeStefano's broader and longer non-compete obligations set forth in the Prior DeStefano Agreements extends only to DeStefano's employment with [Insight Service Group, Inc. ("ISG")] and not with any other person or entity.[7]

The agreement later states:

> ExamWorks and DeStefano, for and in consideration of the covenants described herein, and the other consideration set forth herein, and intending to be legally bound, do hereby **REMISE, RELEASE, AND FOREVER DISCHARGE** each other from all legally waivable causes of action . . . which have accrued through the effective date and which relate to the same . . . claims that form the underlying basis for the Action.[8]

The order entered by this Court on January 29, 2014 (the "Final Order")

prohibited DeStefano from (i) "engag[ing] in the business of selling, arranging

---

public policy counsels in favor of granting specific performance.") (citation omitted), *aff'd*, 867 A.2d 903 (Del. 2005) (TABLE).

[7] Cronin Aff. Ex. A, at 2 (emphasis in original).

[8] Cronin Aff. Ex. A, at 3 (emphasis in original). The "Action" refers to the complaint ExamWorks filed "on or about November 14, 2013 . . . making certain allegations against DeStefano." *Id.* at 1.

and/or facilitating independent medical examinations, peer reviews or bill reviews" until May 27, 2014, and (ii) "solicit[ing], offer[ing] employment to, hir[ing] or otherwise retain[ing] the services of any employee . . . or physician, medical professional, or medical group" in competition with ExamWorks until October 24, 2015.[9] The agreements referenced by the Settlement Agreement (the "Prior DeStefano Agreements") include a number of non-competition, non-solicitation, and confidentiality provisions.[10]

For example, the third stock option award agreement DeStefano signed states, in relevant part, that he shall not (i) "at any time during or after [his] employment with any ExamWorks Company, divulge such Confidential Information or make use of it for [his] own purposes or the purposes of any person or entity other than the ExamWorks Companies";[11] (ii) "market, offer, sell or

---

[9] *ExamWorks*, C.A. No. 9085-VCN, at 1.

[10] The Settlement Agreement defines the "Prior DeStefano Agreements" as the Non-Solicitation and Confidential Information and Protection Agreement dated October 4, 2010; the four Stock Option Award Agreements dated January 6, 2011, May 12, 2011, September 12, 2011, and February 1, 2012; and the Restricted Stock Award Agreement dated August 30, 2013. Cronin Aff. Ex. A, at 1.

[11] Compl. ¶ 37; Ex. D, at 40. The agreement defines "ExamWorks Companies" (and "ExamWorks Company" in the singular) as ExamWorks Group, Inc. ("the Company"), Compl. Ex. D, at 34, and "its direct and indirect subsidiaries and

otherwise furnish any products or services similar to, or otherwise competitive with, those offered by the ExamWorks Companies to any customer of an ExamWorks Company" for two years after termination;[12] (iii) "solicit, offer employment to, hire or otherwise retain the services of any employee . . . or any physician or other medical professional or medical group with whom or which any ExamWorks Company contracts to provide independent medical examination, peer review, utilization review, bill review, set-aside, or related services" for two years after termination;[13] or (iv) "compete with the ExamWorks Companies anywhere where the Company conducts such business" for two years after termination.[14] The fourth stock option award agreement DeStefano signed contains the same relevant language as the third.[15]

---

related companies." Compl. Ex. D, at 40. "Confidential Information" means "confidential information and proprietary data which are not known, and not readily accessible to the competitors of the ExamWorks Companies." Compl. Ex. D, at 40.

[12] Compl. ¶ 38; Ex. D, at 41.
[13] Compl. ¶ 39; Ex. D, at 41.
[14] Compl. ¶ 40; Ex. D, at 41.
[15] Compl. ¶¶ 45-48.

ExamWorks' strongest theory is that "waiver of DeStefano's broader and longer non-compete obligations set forth in the Prior DeStefano Agreements extends only to DeStefano's employment with ISG and not with any other person or entity."[16] Defendants, on the other hand, argue that DeStefano has not violated any valid restriction and that the Settlement Agreement merely was a waiver of prior restrictions: "[t]he Settlement Agreement does not impose any restrictions . . . , nor does it 'incorporate' any of the terms of the Prior Agreements."[17] There is enough uncertainty in the contractual language that the Court cannot summarily dismiss Defendants' arguments, although the arguments are not particularly persuasive. At this point, ExamWorks has raised a colorable claim that DeStefano breached the Settlement Agreement and its associated non-competition, non-solicitation, and confidentiality agreements.

Irreparable harm would seem to be a natural conclusion if one's former regional Vice President of Sales and Marketing became the Chief Executive Officer of a competitor. The Court is persuaded that ExamWorks has suffered

---

[16] If so, the non-competition and non-solicitation provisions in the agreements would continue to apply until October 24, 2015.

[17] Defs.' Mem. in Opp'n to Pl.'s Mot. to Enforce Settlement Agreement and for a TRO 2-3, 23.

some harm for which monetary relief is not sufficient. However, ExamWorks is a large company, and it has not shown specific irreparable harm or the extent of harm that it has suffered or will suffer. Furthermore, some measure of irreparable harm does not necessarily justify the extraordinary relief of a temporary restraining order.

A balancing of the harms, however, weighs in DeStefano's favor. A temporary restraining order would put DeStefano out of work and have repercussions on his family's well-being. ExamWorks claims that it will lose "customers, employees, income, and goodwill"[18] unless the various non-competition and confidentiality provisions are enforced until October 2015. On balance, the marginal injury to DeStefano from an injunction issued on the current, undeveloped record outweighs the harm a large business such as ExamWorks will suffer from the work of an individual terminated nearly one year ago—albeit a former executive currently working as the Chief Executive Officer of an alleged competitor. Additionally, the harm to ExamWorks can be minimized through an expedited hearing on the merits.

---

[18] Pl.'s Mem. in Supp. of Mot. to Enforce Settlement Agreement and for TRO 24.

The request for a temporary restraining order is denied, not so much because of the merits of ExamWorks' claims, but because a balancing of the equities in a context informed by a less-than-precise contractual arrangement and some uncertainty about the scope of irreparable harm counsels against the extraordinary relief.[19]  Neither is the Court persuaded at this time to grant specific performance of the Settlement Agreement on a limited record.  The Court, however, concludes that prompt resolution of the dispute on the merits is warranted.  Trial will be held on November 24-25, 2014, commencing each day at 9:30 a.m., in Dover.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:     Register in Chancery-K

---

[19]  With this conclusion, it is not necessary to address DeStefano's argument that the scope of his restrictive covenants is excessive.